Andrew M. Calamari
Sanjay Wadhwa
Thomas P. Smith, Jr.
David Stoelting
William Finkel
New York Regional Office
SECURITIES AND EXCHANGE COMMISSION
200 Vesey Street, Suite 400
New York, NY 10281-1022
212-336-0174 (Stoelting)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

          v.

Michael J. Ling,

          Defendant.

15 CV _____

COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission"), for its complaint against Michael J. Ling ("Ling"), alleges as follows:

## SUMMARY

1. The Commission brings this enforcement action charging fraud against Ling, a day trader and former market maker who engaged in a market manipulation scheme involving shares of Cyberdefender Corp. ("Cyberdefender"), a defunct computer software company. From at least September 2009 through June 2010, Ling manipulated the share price of Cyberdefender stock. He artificially raised Cyberdefender's closing stock price to at least $4.00 and maintained it above that price so that the company's shares would be eligible to be listed on the NASDAQ Capital Market ("NASDAQ"), an equity market exchange for companies with low market

capitalizations. Ling's trading created an illusion of an active market in the stock, which caused the stock price to artificially increase. In exchange, Ling was given valuable warrants to purchase Cyberdefender stock at a bargain price.

2. Ling used various trading gimmicks to manipulate Cyberdefender's share price, including marking-the-close and entering into matched trades with Cyberdefender promoters. As a result, Ling's trades helped artificially push the closing price of Cyberdefender's shares from approximately $2.00 in September 2009 to over $4.80 in January 2010. Ling's manipulations were the critical factor is qualifying Cyberdefender to be listed on the NASDAQ on June 8, 2010.

3. Ling personally profited from the scheme. He exercised some of the warrants he was given, as well as other warrants he purchased. Ling received profits from his wrongdoing of approximately $651,000 by trading Cyberdefender stock and selling shares received from the exercise of his warrants at artificially inflated prices.

## VIOLATIONS

4. By virtue of the conduct alleged herein, Ling, directly or indirectly, singly, or in concert, has engaged and, unless restrained and enjoined will continue to engage in acts, practices, schemes and courses of business that constitute violations of Section 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)] and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R.§§ 240.10b-5(a) and (c)].

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action under Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

6.  Venue is proper in the District of New Jersey under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Ling resides in the District and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District of New Jersey; for example, Ling traded shares of Cyberdefender stock from his residence in New Jersey, and his trades were effected, directly or indirectly, by making use of the means and instruments of transportation or communication in interstate commerce, or the mails.

## DEFENDANT

7.  **Ling**, age 51, is a day trader and real estate investor who resides in Florham Park, New Jersey. From 1987 through 2001, Ling was a NASDAQ trader at a large brokerage firm, during which time he held Series 7, 24, 55 and 63 securities licenses.

## RELATED ENTITY

8.  **Cyberdefender Corp.** In 2009, Cyberdefender was a computer software company, based in California, quoted on the OTC Bulletin Board ("OTC BB") and OTC Pink, which were interdealer quotation systems for low-priced and penny stocks. Cyberdefender's common stock was registered under Exchange Act Section 12(g) during the relevant period. On June 8, 2010, it registered its common stock under Section 12(b) of the Exchange Act and listed on the NASDAQ. On February 23, 2012, Cyberdefender filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code, and all its assets were sold. On March 14, 2012, the NASDAQ

filed a Form 25 to delist and deregister the stock. The previous Section 12(g) registration then automatically revived, and the Commission revoked its 12(g) registration on March 6, 2013.

# FACTS

## Ling Violated the Federal Securities Laws.

### A. Background

9. In 2009, Cyberdefender was a struggling computer software company, based in California and quoted on the OTC BB and OTC Pink stock quotation systems. Its primary product was virus protection software.

10. In the fall of 2009 through early 2010, Cyberdefender's officers were eager for Cyberdefender's shares to become listed on NASDAQ, which they believed would more easily enable them to raise capital.

11. One key obstacle was that Cyberdefender's stock price had dropped to approximately $2.00 per share, and NASDAQ had a listing requirement that the stock have a closing bid of $4.00 or higher for 90 consecutive trading days prior to applying to be listed.

12. In September 2009, Cyberdefender's chief executive officer sent an email to Cyberdefender's lead placement agent ("Placement Agent") and others, recommending that Cyberdefender begin "aggressive IR [investor relations]" to "…get the value to where we want it to go."

13. Before then, in November 2008, Cyberdefender, at the Placement Agent's recommendation, had retained two promoters ("Promoters A and B") to promote Cyberdefender. Promoters A and B formed a company ("the Promotion Company") as a vehicle to receive shares for compensation and to distribute shares as compensation to sub-promoters. Cyberdefender

issued to the Promotion Company warrants to purchase 2.25 million shares of Cyberdefender stock at a price of $1.25 per share. By June 30, 2009, the warrants had vested.

14. The Promotion Company transferred warrants for Cyberdefender shares to various promoters and traders, including Ling.

15. Ling purchased Cyberdefender shares and warrants from a hedge fund in a private securities transaction arranged by the Placement Agent in January 2009. The warrants enabled Ling to purchase Cyberdefender stock at a price of $1.00 per share. He also received warrants from the Promotion Company to purchase 300,000 shares of Cyberdefender in June 2009, purportedly to introduce the company as an investment to Ling's high net worth contacts. In addition, Ling received another 50,000 warrants to purchase shares from the Promotion Company in June 2010. Ling did not introduce any investors to Cyberdefender.

16. Between September 1, 2009 and June 8, 2010, Ling traded heavily in shares of Cyberdefender stock.

17. During this time, the volume of shares Ling traded was approximately 17% of the total market volume of Cyberdefender. On days when he traded between September 1, 2009 and June 8, 2010, the average daily volume of shares of Cyberdefender was about 70% higher than on days Ling did not trade, jumping from 18,668 to 31,598.

### B. Ling Marked-the-Close in Shares of Cyberdefender Stock.

18. "Marking-the-Close" is the practice of attempting to artificially influence the closing price of a stock by executing purchase or sale orders at or near the close of the market.

19. Between September 1, 2009 and June 8, 2010, to boost Cyberdefender's share price, Ling traded Cyberdefender on the majority of trading days, often trading near the close of the trading day.

20. During the September 2009 to June 2010 period, Ling was a net seller of Cyberdefender stock, with 45% of his executed trades being buys. However, during the last fifteen minutes of the trading day, approximately 73% of his executed trades were buys. In the months after Cyberdefender's stock was listed on NASDAQ, Ling continued to trade, as he reaped gains from the exercise of the warrants. However, his trading pattern changed: only 55% of his executed trades were buys in the final 15 minutes of trading.

21. Specifically, from September 1, 2009, through March 29, 2010, the period when Cyberdefender was attempting to attain a $4.00 closing bid for 90 trading days, there were 144 trading days. Ling traded on 127 of those days.

22. Of those 127 days, Ling traded in the final 15 minutes before the close on 54 days (43% of the days he traded), and on 61 days (or 48% of the days he traded), he was one of the final four trades of the day, with some taking place prior to the final fifteen minutes of the trading day.

23. Importantly, Ling was the last trade, and thus, set the closing price, on 48 days, including 39 days where he was a buyer. As reflected in Appendix A, in 38 of these 48 days between September 1, 2009 and March 29, 2010 when he was the last trade of the day, his trade either increased or kept Cyberdefender's share price constant from the previous execution price.

24. When the last trade of the trading day in shares of Cyberdefender was a Ling buy execution, the orders he placed for these trades were almost always at the best offer price or were market orders, ensuring their execution.

25. In addition, there were 40 days where Ling placed a buy order after the last trade of the trading day.

26. Because the goal of Ling's trading was to set the stock's closing bid at or above $4.00 per share, Ling merely had to maintain the closing bid price, and not necessarily affect the closing trade price.

27. On 15 occasions, Ling's final buy order after the last trade of the trading day represented the best closing bid, and 21 times it matched the best closing bid, thus setting a floor for the bid in case another trader's offer executed against the best bid.

28. These orders were often placed when the stock price was close to $4.00, and were placed to set a floor for the closing bid and not to be executed.

29. As discussed above, for many trades, Ling often priced his buy orders at or near the best offer (or placed market orders), because he wanted those orders to be filled. By placing late orders below the best offer, Ling expected that they would not be executed. Ling's order would be an open bid in the market, at or above $4.00, which would help ensure that the closing bid would not drop below $4.00.

30. Ling's trades were coordinated with Promoter B. For example, on November 4, 2009, Ling placed 35 orders throughout the day, including the last trade, and during the course of the trading day, Cyberdefender's stock price rose from $3.10 to $3.45. That day, Ling had three telephone conversations with Promoter B, at 10:20 a.m., 12:21 p.m. and 5:21 p.m.

31. Ling continued to mark-the-close of Cyberdefender stock until at least June 8, 2010 when the stock was listed on the NASDAQ.

32. Between March 30 and June 8, Ling traded on 27 out of 49 trading days. He was the last trade on 8 days, and on an additional 8 days, he placed a buy order after a different market participant executed the last trade. Ling knowingly, or at least recklessly, repeatedly entered trades and placed orders near the market close in order to artificially raise the closing

price and closing bid, respectively, of Cyberdefender's stock so that it would be eligible to become listed on NASDAQ and he would be able to increase his profits when he exercised his Cyberdefender warrants.

33.     Because Ling's warrants were exercisable at $1.00 or $1.25, any increase in the price of the stock above those amounts would result in increased profits for Ling upon his exercise of the warrants.

34.     Ling's trading was also not economically rational, as he repeatedly purchased and sold Cyberdefender shares at prices well above the cost of exercising the warrants he already possessed.

### C.     Ling Entered into Matched Trades.

35.     Ling entered into matched trades with Promoter B. "Matched trades" occur when a person, for the purpose of creating a false or misleading appearance of active trading in a security, enters an order to buy (or sell) that security with the knowledge that a substantially similar order has been or will be placed to sell (or buy) the security.

36.     During this period, on at least twenty-three occasions, Ling entered into matched trades with accounts controlled by Promoter B.

37.     As shown in Appendix B, for sixteen trades, Ling's and Promoter B's orders were executed within one second of each other at the same price and quantity, and on an additional seven occasions Ling's and Promoter B's orders were executed within one second of each other at the same price, but at a different quantity.

38.     Ling and Promoter B coordinated these matched trades.

39.     For example, on September 18, 2009, there were three matched trades between a firm owned by Promoter B and Ling: at 1:39:27 p.m. for 500 shares, 1:39:36 p.m. for 1000

shares and 1:41:07 p.m. for 500 shares. Each trade was executed at $2.60. On that day, there were eight calls between Ling and Promoter B, including calls at 1:34 p.m. and 1:41 p.m.

40.     Ling entered into matched trades of Cyberdefender shares with Promoter B knowing that Promoter B would enter or had entered offsetting orders for these trades.

41.     Ling entered into matched trades with Promoter B with the intention of creating a false or misleading appearance of active trading in Cyberdefender stock or a false and misleading appearance with respect to the price and liquidity of Cyberdefender stock.

42.     Ling's efforts to manipulate Cyberdefender's share price were successful. In early January 2010, Cyberdefender's closing stock price peaked at $4.82. By March 30, 2010, Cyberdefender had met the requirement that the closing bid for its stock equal or exceed $4.00 for 90 days, and the company submitted its application to NASDAQ. As discussed above, Ling's manipulative trading continued until Cyberdefender's stock became listed on NASDAQ on June 8, 2010. Thereafter, he continued to trade as he reaped profits from the exercise of the warrants.

### D.      Ling Profited From His Manipulative Scheme.

43.     In early September 2009, Cyberdefender stock traded at approximately $2.00 per share. In June 2010, when the stock became listed on NASDAQ, it traded at approximately $4.50 per share.

44.     Between September 1, 2009 and June 8, 2010, Ling purchased and sold approximately 840,000 shares of Cyberdefender stock in the open market for profits of $36,368. He also exercised for $1.25, and sold, 120,000 shares of the 300,000 warrants he received from the Promotion Company for profits of $355,764.

45. After the scheme concluded, Ling continued to trade, but not as frequently, and Cyberdefender's share price dropped. Cyberdefender stock traded at $3.65 per share by the end of October 2010. However, Ling continued to profit from Cyberdefender's manipulated stock price. Between June and October 2010, Ling exercised for $1.00, and sold an additional 93,018 shares from warrants he received in a private securities transaction in early 2009, for profits of $259,246.

46. In sum, his net profits from the scheme were at least $651,378.

### FIRST CLAIM FOR RELIEF
### Violations of Section 17(a)(1) and (3) of the Securities Act

47. The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46.

48. Ling, directly or indirectly, singly or in concert in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or by the use of the mails, with scienter has:

    (a) employed devices, schemes or artifices to defraud; and

    (b) engaged in acts, transactions, practices and courses of business, which operated or would have operated as a fraud or deceit upon purchasers of securities.

49. By marking-the-close, Ling directly or indirectly, violated, and unless enjoined will again violate, Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

50. By entering into matched trades, Ling directly or indirectly, violated, and unless enjoined will again violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) Thereunder

51. The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46.

52. Ling, in connection with the purchase or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, with scienter, has:

   (a)   employed devices, schemes or artifices to defraud; and

   (b)   engaged in acts, transactions, practices and courses of business, which operated as a fraud or deceit upon any person.

53. Ling, by marking-the close and entering into matched trades, directly or indirectly, violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court issue a Final Judgment:

### I.

Permanently enjoining defendant Ling and his agents, servants, employees and attorneys, and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from violating Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)] and Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)];

## II.

Ordering Ling to disgorge any and all ill-gotten gains he received as a result of his violations of the federal securities laws, plus prejudgment interest thereon;

## III.

Ordering Ling to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws; and

## IV.

Granting such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          March 27, 2015

SECURITIES AND EXCHANGE COMMISSION

By: _____

Andrew M. Calamari
Sanjay Wadhwa
Thomas P. Smith, Jr.
David Stoelting
William Finkel
New York Regional Office
SECURITIES AND EXCHANGE
COMMISSION
200 Vesey Street, Room 400
New York, NY 10281-1022
212-336-0174 (Stoelting)
Attorneys for Plaintiff

Appendix A

| | | | | | | OTC BB Best Bid at Order Time | OTC BB Best Offer at Order Time | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Ling as Final Trade of Day September 1, 2009 through March 30, 2010 Trades that Increased Price or Kept Price Constant | | | | | | |
| Date | Buy/Sell | Order Type | Limit Order Price | Ling Order Time | | | | Ling Execution Time | Execution Price | Last Price at Order Time |
| 9/10/2009 | Buy | Limit | $2.00 | 3:59:35 PM | | $1.98 | $2.00 | 3:59:46 PM | $2.00 | $2.00 |
| 9/11/2009 | Sell | Limit | $2.10 | 3:20:45 PM | | $2.06 | $2.13 | 3:56:56 PM | $2.10 | $2.09 |
| 9/14/2009 | Buy | Limit | $2.25 | 3:58:45 PM | | $2.23 | $2.25 | 3:58:54 PM | $2.25 | $2.20 |
| 9/23/2009 | Buy | Market | | 3:56:04 PM | | $2.60 | $2.74 | 3:56:10 PM | $2.74 | $2.60 |
| 9/24/2009 | Buy | Limit | $2.74 | 3:53:38 PM | | $2.58 | $2.74 | 3:54:03 PM | $2.74 | $2.70 |
| 10/8/2009 | Buy | Market | | 3:59:14 PM | | $2.89 | $2.90 | 3:59:34 PM | $2.90 | $2.90 |
| 10/23/2009 | Buy | Market | | 3:59:40 PM | | $3.21 | $3.22 | 3:59:42 PM | $3.21 | $3.21 |
| 10/27/2009 | Buy | Limit | $2.85 | 3:58:38 PM | | $2.78 | $2.85 | 3:58:56 PM | $2.85 | $2.78 |
| 11/4/2009 | Buy | Market | | 3:59:41 PM | | $3.38 | $3.45 | 3:59:47 PM | $3.45 | $3.45 |
| 11/6/2009 | Buy | Limit | $3.42 | 3:59:34 PM | | $3.40 | $3.42 | 3:59:51 PM | $3.42 | $3.42 |
| 11/9/2009 | Buy | Market | | 3:59:38 PM | | $3.44 | $3.50 | 3:59:38 PM | $3.50 | $3.44 |
| 11/12/2009 | Buy | Limit | $3.65 | 3:58:48 PM | | $3.60 | $3.65 | 3:59:11 PM | $3.65 | $3.60 |
| 11/18/2009 | Buy | Market | | 3:59:56 PM | | $4.55 | $4.62 | 3:59:59 PM | $4.62 | $4.55 |
| 11/19/2009 | Buy | Limit | $4.60 | 3:59:56 PM | | $4.43 | $4.60 | 3:59:56 PM | $4.60 | $4.43 |
| 11/25/2009 | Buy | Limit | $4.40 | 3:10:20 PM | | $4.30 | $4.40 | 3:10:20 PM | $4.40 | $4.30 |
| 12/2/2009 | Buy | Limit | $4.60 | 3:50:55 PM | | $4.53 | $4.60 | 3:51:01 PM | $4.60 | $4.55 |
| 12/4/2009 | Buy | Limit | $4.40 | 2:45:31 PM | | $4.37 | $4.40 | 2:45:42 PM | $4.40 | $4.37 |
| 12/7/2009 | Buy | Market | | 3:34:15 PM | | $4.10 | $4.25 | 3:34:20 PM | $4.25 | $4.16 |
| 12/8/2009 | Sell | Limit | $4.05 | 3:57:10 PM | | $4.05 | $4.10 | 3:57:16 PM | $4.05 | $4.05 |
| 12/9/2009 | Buy | Limit | $4.17 | 3:59:06 PM | | $4.09 | $4.17 | 3:59:06 PM | $4.15 | $4.10 |
| 12/10/2009 | Buy | Limit | $4.11 | 3:55:27 PM | | $4.11 | $4.20 | 3:55:36 PM | $4.20 | $4.17 |
| 12/14/2009 | Buy | Limit | $4.30 | 3:55:55 PM | | $4.11 | $4.30 | 3:56:02 PM | $4.29 | $4.26 |
| 12/15/2009 | Buy | Limit | $4.29 | 3:43:20 PM | | $4.20 | $4.29 | 3:43:20 PM | $4.29 | $4.20 |
| 12/23/2009 | Buy | Market | | 3:58:53 PM | | $4.40 | $4.48 | 3:59:03 PM | $4.50 | $4.48 |
| 1/4/2010 | Buy | Limit | $4.82 | 3:56:06 PM | | $4.42 | $4.82 | 3:56:11 PM | $4.82 | $4.45 |
| 1/5/2010 | Buy | Limit | $4.78 | 3:57:27 PM | | $4.58 | $4.78 | 3:57:27 PM | $4.75 | $4.60 |
| 1/20/2010 | Buy | Market | | 3:11:13 PM | | $4.02 | $4.24 | 3:11:26 PM | $4.15 | $4.02 |
| 1/28/2010 | Sell | Limit | $4.00 | 3:59:38 PM | | $4.00 | $4.15 | 3:59:51 AM | $4.00 | $4.00 |
| 2/4/2010 | Sell | Limit | $4.00 | 3:58:57 PM | | $4.00 | $4.20 | 3:58:59 PM | $4.00 | $4.00 |
| 2/5/2010 | Buy | Market | | 3:51:13 PM | | $4.00 | $4.20 | 3:51:14 PM | $4.20 | $4.00 |
| 2/8/2010 | Buy | Limit | $4.10 | 3:58:56 PM | | $4.00 | $4.20 | 3:59:36 PM | $4.10 | $4.01 |
| 2/19/2010 | Buy | Limit | $4.35 | 3:37:04 PM | | $4.05 | $4.35 | 3:37:13 PM | $4.30 | $4.05 |
| 3/4/2010 | Buy | Limit | $4.15 | 3:54:09 PM | | $4.05 | $4.15 | 3:54:34 PM | $4.15 | $4.06 |
| 3/10/2010 | Buy | Limit | $4.10 | 3:32:21 PM | | $4.05 | $4.15 | 3:32:33 PM | $4.10 | $4.10 |
| 3/11/2010 | Buy | Market | | 3:32:49 PM | | $4.05 | $4.20 | 3:32:56 PM | $4.20 | $4.15 |
| 3/19/2010 | Buy | Limit | $4.09 | 3:59:13 PM | | $4.01 | $4.09 | 3:59:13 PM | $4.09 | $4.00 |
| 3/23/2010 | Buy | Limit | $4.10 | 3:43:39 PM | | $3.90 | $4.10 | 3:43:46 PM | $4.10 | $4.05 |
| 3/24/2010 | Buy | Limit | $4.10 | 3:23:07 PM | | $4.00 | $4.10 | 3:23:10 AM | $4.10 | $4.01 |

## Appendix B

| Account Name | BUY/SELL | Execution Quantity | Execution Price | Execution Date | Execution Time |
|---|---|---|---|---|---|
| Michael Ling | SELL | 500 | $2.60 | 9/18/2009 | 1:39:27 PM |
| Promoter B Owned Firm | BUY | 500 | $2.60 | 9/18/2009 | 1:39:27 PM |
| Michael Ling | SELL | 1,000 | $2.60 | 9/18/2009 | 1:39:36 PM |
| Promoter B Owned Firm | BUY | 1,000 | $2.60 | 9/18/2009 | 1:39:36 PM |
| Michael Ling | SELL | 900 | $2.60 | 9/18/2009 | 1:41:07 PM |
| Promoter B Owned Firm | BUY | 500 | $2.60 | 9/18/2009 | 1:41:07 PM |
| Michael Ling | SELL | 500 | $2.60 | 9/21/2009 | 12:56:26 PM |
| Promoter B Owned Firm | BUY | 500 | $2.60 | 9/21/2009 | 12:56:26 PM |
| Michael Ling | SELL | 1,000 | $2.60 | 9/21/2009 | 12:56:53 PM |
| Promoter B Owned Firm | BUY | 1,000 | $2.60 | 9/21/2009 | 12:56:53 PM |
| Michael Ling | SELL | 400 | $2.55 | 9/21/2009 | 1:47:22 PM |
| Promoter B Owned Firm | BUY | 400 | $2.55 | 9/21/2009 | 1:47:22 PM |
| Michael Ling | SELL | 400 | $2.55 | 9/21/2009 | 1:47:48 PM |
| Promoter B Owned Firm | BUY | 400 | $2.55 | 9/21/2009 | 1:47:48 PM |
| Michael Ling | SELL | 700 | $2.55 | 9/21/2009 | 1:52:22 PM |
| Promoter B Owned Firm | BUY | 700 | $2.55 | 9/21/2009 | 1:52:22 PM |
| Michael Ling | SELL | 500 | $2.55 | 9/21/2009 | 1:54:11 PM |
| Promoter B Owned Firm | BUY | 500 | $2.55 | 9/21/2009 | 1:54:11 PM |
| Michael Ling | SELL | 400 | $2.55 | 9/21/2009 | 2:54:16 PM |
| Promoter B Owned Firm | BUY | 400 | $2.55 | 9/21/2009 | 2:54:16 PM |
| Michael Ling | SELL | 400 | $2.55 | 9/21/2009 | 2:56:12 PM |
| Promoter B Owned Firm | BUY | 100 | $2.55 | 9/21/2009 | 2:56:12 PM |
| Michael Ling | SELL | 400 | $2.60 | 9/23/2009 | 10:02:02 AM |
| Promoter B Owned Firm | BUY | 400 | $2.60 | 9/23/2009 | 10:02:03 AM |
| Michael Ling | SELL | 500 | $2.60 | 9/23/2009 | 10:02:23 AM |
| Promoter B Owned Firm | BUY | 500 | $2.60 | 9/23/2009 | 10:02:23 AM |
| Michael Ling | SELL | 330 | $2.65 | 9/23/2009 | 11:06:09 AM |
| Promoter B Owned Firm | BUY | 330 | $2.65 | 9/23/2009 | 11:06:09 AM |
| Michael Ling | SELL | 600 | $2.70 | 9/24/2009 | 3:15:11 PM |
| Promoter B Owned Firm | BUY | 600 | $2.70 | 9/24/2009 | 3:15:11 PM |
| Michael Ling | SELL | 600 | $2.70 | 9/24/2009 | 3:23:20 PM |
| Promoter B Owned Firm | BUY | 400 | $2.70 | 9/24/2009 | 3:23:20 PM |
| Michael Ling | SELL | 500 | $2.65 | 10/1/2009 | 9:46:01 AM |
| Promoter B Owned Firm | BUY | 500 | $2.65 | 10/1/2009 | 9:46:01 AM |
| Michael Ling | SELL | 789 | $4.36 | 12/3/2009 | 3:59:50 PM |
| Promoter B | BUY | 5,000 | $4.36 | 12/3/2009 | 3:59:50 PM |
| Michael Ling | BUY | 200 | $4.67 | 12/29/2009 | 2:22:39 PM |
| Promoter B Owned Firm | SELL | 90 | $4.67 | 12/29/2009 | 2:22:39 PM |
| Michael Ling | BUY | 200 | $4.80 | 12/31/2009 | 9:45:00 AM |
| Promoter B Owned Firm | SELL | 200 | $4.80 | 12/31/2009 | 9:45:00 AM |
| Michael Ling | BUY | 500 | $4.78 | 1/6/2010 | 11:12:21 AM |
| Promoter B Owned Firm | SELL | 700 | $4.78 | 1/6/2010 | 11:12:21 AM |
| Michael Ling | BUY | 2,500 | $4.19 | 3/3/2010 | 3:24:59 PM |
| Promoter B IRA Account | SELL | 2,500 | $4.19 | 3/3/2010 | 3:24:59 PM |
| Michael Ling | BUY | 1,039 | $4.19 | 3/3/2010 | 3:42:41 PM |
| Promoter B IRA Account | SELL | 600 | $4.19 | 3/3/2010 | 3:42:41 PM |

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Application is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

By: __/s/ Andrew M. Calamari_____
Andrew M. Calamari
*Counsel for Plaintiff*
U.S. SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022

## DESIGNATION OF AGENT FOR SERVICE

Pursuant to Local Civil Rule 101.10, because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the above captioned action. Therefore, service upon the United States or its authorized designee, Caroline Sadlowski, United States Attorney's Office for the District of New Jersey, 970 Broad Street, Suite 700, Newark, New Jersey, 07102, shall constitute service upon the Commission for purposes of this action.

By: __/s/ Andrew M. Calamari__
Andrew M. Calamari
*Counsel for Plaintiff*
U.S. SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022